IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-00399-WYD-KLM

BITUMINOUS CASUALTY CORPORATION,

　　　Plaintiff,

v.

FRONT RANGE EXCAVATING, INC., TRI-STAR CONSTRUCTION WEST, LLC and GOLD PEAK AT PALOMINO PARK, LLC,

　　　Defendants.

**ORDER**

I.　　INTRODUCTION

　　　THIS MATTER is before the court on Plaintiff's Motion for Summary Judgment as to Counts I and II of its Complaint for Declaratory Judgment (ECF No. 46).  On September 17, 2014, I held a hearing on this motion.  For reasons stated on the record at the September 17, 2014 hearing and set forth below, I deny the motion for summary judgment, finding genuine issues of material fact.

　　　By way of background, Plaintiff Bituminous filed this declaratory judgment action to determine whether it has an obligation to defend or indemnify Plaintiff's named insured, Front Range, in connection with two underlying lawsuits in which Front Range is a defendant.  The underlying lawsuits arise out of claims of negligent construction of a condominium project in Highlands Ranch, Colorado.  In the underlying lawsuits, Front Range is alleged to have been a grading subcontractor on the project.

　　　Plaintiff issued Front Range seven general liability policies and seven umbrella

policies, effective for consecutive annual policy periods beginning August 3, 2004 and ending August 3, 2011.  Here, the only policies in dispute are the primary and umbrella policies issued for the 2004-2005 policy period ("the Bituminous Policies").  The Bituminous Policies both contain endorsements that exclude coverage for "property damage" at any location or project for which a consolidated insurance program ("wrap-up policy") has been obtained.  A wrap-up policy was obtained for the project.

      Plaintiff contends that the "wrap exclusions" were added to the Bituminous policies after Front Range informed Bituminous that Front Range was covered by the wrap-up policy in place for the Project.  Plaintiff also claims that Front Range was aware that if it participated in a wrap-up program with respect to a construction project, it could request a premium reduction for payroll associated with that project, and in exchange, the Bituminous policies would be endorsed to exclude coverage for that project.  Pursuant to the terms of the Bituminous Policies, Front Range was indeed credited with a premium reimbursement based on Front Range's participation in the wrap-up policy for the Project, and the Bituminous Policies were endorsed to exclude coverage for projects for which a wrap-up policy had been obtained (including the Project in question).  Plaintiff further asserts that Front Range never told Bituminous that it disagreed with the premium reimbursement Front Range received or the wrap exclusion endorsements excluding coverage for Front Range at the Project.  On the other hand, Front Range contends that the "wrap-up exclusions" were not valid and enforceable endorsements to the 2004-2005 Bituminous Policies because they constituted a unilateral modification of the 2004-2005 policies.

      The underlying lawsuits allege that the damage at the Project was caused by

Front Range's grading work.  There is a dispute as to whether Front Range's grading subcontract was entered on November 12, 2004 or April 15, 2005.  Plaintiff asserts that the wrap exclusions in the Bituminous Policies were effective January 31, 2005, over two months before Front Range's grading work began or on June 1, 2005.  Thus, Plaintiff argues that all claims for any alleged "property damage" at the Project are excluded from coverage under the Bituminous Policies.  Therefore, Bituminous has no duty to defend or indemnify Front Range with respect to the underlying lawsuits.  In response, Front Range states that even if the exclusions were a part of the policies, which it disputes, Plaintiff nonetheless had a duty to defend Front Range in the underlying lawsuits because Plaintiff cannot demonstrate that the defective work occurred only after the dates the wrap exclusions became effective.  Front Range further argues that there are disputed issues of fact as to whether the wrap exclusions became effective on January 31, 2005 or June 1, 2005.

II.     FACTS

In 2010, the Gold Peak Homeowners Association ("Association") sued Tri-Star Construction West, LLC ("Tri-Star") and Gold Peak at Palomino Park, LLC ("Gold Peak") for alleged defects in the construction of the Project.  Front Range was not part of the Association's lawsuit. (ECF No. 46, Ex. A).  In its lawsuit against Tri-Star and Gold Peak, the Association alleged that the Project was defectively constructed resulting in defects in, among other things, the grading work at the Project, including an inadequate slope of grading adjacent to the foundation around the buildings.  (ECF No. 46, Ex. A ¶ 47).

Tri-Star and Gold Peak, in turn, sued Front Range in two separate underlying

lawsuits: (1) *Tri-Star Construction West, LLC v. A-1 Firestopping, Inc., et al.*, Case No. 2012CV5863, pending in the District Court for the City and County of Denver, Colorado ("Tri-Star Lawsuit"); and (2) *Gold Peak at Palomino Park, LLC v. Harrington Architectural Partnership, LLC.*, Case No. 2012CV295, pending in the District Court of Douglas County, Colorado ("Gold Peak Lawsuit") (collectively "the Underlying Lawsuits"). (ECF No. 46, Ex. B and Ex. C).

### A. The Tri-Star Lawsuit

The Tri-Star lawsuit commenced on or about September 20, 2012 with the filing of Tri-Star's Complaint in the Denver County District Court, Colorado. A First Amended Complaint was filed September 28, 2012. (ECF No. 46, Ex. B). Tri-Star alleged that it was the general contractor of the Project and that Front Range was a subcontractor that performed "overlot and rough grading work pursuant to contract" with Tri-Star. (ECF No. 46, Ex. B, ¶ 7). Tri-Star further alleged that a judgment was eventually entered against Tri-Star and in favor of the Association. (ECF No. 46, Ex. B, ¶ 29). Tri-Star also alleged that Front Range was one of the subcontractors on the Project and that Front Range's allegedly faulty work, at least in part, resulted in the judgment against Tri-Star. (ECF No. 46, Ex. B, ¶ 7, 33). Tri-Star further alleged that "there are insufficient funds available under the 'OCIP' or 'WRAP' policy number GLW786580 issued by ACE/Westchester Surplus Lines Insurance Company ("ACE") to satisfy the judgments against Tri-Star and the Developer." (ECF No. 46, Ex. B ¶ 31).

### B. The Gold Peak Lawsuit

The Gold Peak Lawsuit was filed on February 8, 2012. Gold Peak subsequently filed a Second Amended Complaint on or about December 7, 2012. (ECF No. 46, Ex.

C). In its Second Amended Complaint, Gold Peak alleged that it was the developer of the Project, and that Front Range was a subcontractor that performed "overlot and rough grading work." (ECF No. 46, Ex. C, ¶ 9). Gold Peak further alleged that a verdict was entered in favor of the Association and against Gold Peak. (ECF No. 46, Ex. C ¶ 39). Gold Peak also alleged that Front Range was one of the subcontractors and that Front Range performed its work negligently, resulting, at least in part, in the verdict against Gold Peak. (ECF No. 46, Ex. C ¶¶ 9, 39). Moreover, Gold Peak alleged that an Owner Controlled Insurance Policy for the Project was obtained by Gold Peak. (ECF No. 46, Ex. C ¶ 57).

    C.    <u>The Bituminous Policies</u>

Bituminous issued seven general liability policies and seven umbrella policies to Front Range, effective for consecutive annual policy periods beginning August 3, 2004 and ending August 3, 2011.

    1.    <u>The Primary Policies</u>

Front Range has conceded that Bituminous has no duty to defend or indemnify Front Range with respect to the claims asserted against Front Range in the Underlying Lawsuits under the 2005-06, 2006-07, 2007-08, 2008-09, 2009-10, or 2010-11 Primary Policies because of the wrap policy exclusions contained in those policies. (ECF No. 46, Ex. D, pp. 7-18). As to the 2004-05 Primary Policy, Bituminous issued a wrap policy exclusion to Front Range titled "Exclusion-Designated Operations Covered By A Consolidated (Wrap-Up) Insurance Program," which reads as follows:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION-DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM**
* * *
The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY and COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section **I** - Coverages):

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated insurance program:

(1) Provides coverage identical to that provided by this Coverage Part;
(2) Has limits adequate to cover all claims; or
(3) Remains in effect.

(ECF No. 46-5, Ex. E).  Front Range disputes the validity and enforceability of this wrap

policy exclusion.

The 2004-05 Bituminous Primary Policy also contains a separate schedule of

projects to which the wrap policy exclusion applies (ECF No. 46-5, Ex. E, Form No.

GOX-2287 (01/93)).  That schedule contains the following listing:

> EFFECTIVE 1/31/05
> GOLD PEAK @PALAMINO PARK, LLC FOR THE GOLD PEAK
> @PALAMINO PARK, LLC CONDOMINIUMS, 6700 PALAMINO
> PARKWAY, HIGHLANDS RANCH, COLORADO 80126

(ECF No. 46-5, Ex. E, Form No. GOX-2287 (01/93)).  This scheduled entry references

the Project at issue here.

The wrap policy exclusion and schedule of locations were added to the 2004-05 Bituminous Primary Policy by a change endorsement which states "Policy Changes Effective 06-01-05 to Policy Expiration 08-03-05." (ECF No. 46-5, Ex. E).

### 2.   The Umbrella Policies

Front Range has conceded that Bituminous has no duty to defend or indemnify Front Range with respect to the claims asserted against Front Range in the Underlying Lawsuits under the 2005-06, 2006-07, 2007-08, 2008-09, 2009-10, or 2010-11 Umbrella Policies because each contains a wrap policy exclusion. (ECF No. 46, Ex. D at p.18-30). As to the 2004-05 Umbrella Policy, Bituminous issued a wrap policy exclusion to Front Range titled "Exclusion-Designated Operations Covered By A Consolidated (Wrap-Up) Insurance Program," which reads as follows:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION-DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM**

Description and Location of Operation(s):
Gold Peak @ Palomino Park, LLC for the Gold Peak @ Palomino Park, LLC Condominiums, 6700 Palomino Parkway, Highlands Ranch, CO 80126

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (SECTION I - COVERAGES):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

      This exclusion applies whether or not the consolidated insurance program:

      (1) Provides coverage identical to that provided by this Coverage Part;

      (2) Has limits adequate to cover all claims; or

      (3) Remains in effect.

(ECF No. 46, Ex. F). Front Range disputes the validity and enforceability of this wrap policy exclusion. The wrap policy exclusion was added to the 2004-05 Bituminous Umbrella Policy by a change endorsement which states, "This endorsement is effective from 01/31/05." (ECF No. 46, Ex. F).

    D.    <u>The Wrap Policy</u>

Westchester issued a Commercial General Liability Policy to Gold Peak under Policy No. GLW786580 providing coverage for property damage at the Project ("The Wrap Policy"), which was in effect from January 31, 2005 to March 31, 2009. (ECF No. 46, Ex. G). Front Range is a Named Insured under the Wrap Policy. (ECF No. 46, Ex. G). The Wrap Policy contains a "Prior Work Exclusion" which excludes coverage for "property damage" arising out of "your work" or arising out of the "products-completed operations hazard" if the work was performed prior to the effective date of this policy. However, the exclusion contains an exception for "Front Range Excavating, Inc.'s work which was completed under a contract dated November 12, 2004 at a contract cost of $34,510.00. The work included mobile silt fence, stripping site of vegetation and stockpiling. No other work is contemplated under this exception." (ECF No. 46, Ex. G).

E.     The Contracts Between Tri-Star and Front Range

Tri-Star and Front Range entered into two contracts pertaining to the Project. The first contract is dated November 12, 2004 and calls for Front Range to install silt fencing and perform stripping of vegetation on the site of the Project. (ECF No. 46, Ex. H). The second contract between Tri-Star and Front Range is dated April 15, 2005 and calls for Front Range to perform "excavation and over-lotting" work at the Project. (ECF No. 46, Ex. I). Both contracts state that Gold Peak is the owner of the Project. (ECF No. 46, Ex. H and Ex. I). The April 15, 2005 contract reads as follows:

> Wrap-Up Insurance. The Owner of the job site has elected to procure and maintain a controlled insurance program whereby Owner will furnish certain insurance coverages relating to on-site construction activities known as a "Wrap-Up Insurance Program" for the Project. Under the Wrap-Up Insurance Program, Owner will provide General Liability Insurance coverages for all Subcontractors for work performed on-site at the Project…

(ECF No. 46, Ex. I at 7).

III.    ANALYSIS

A.     Standard for Summary Judgment

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to

the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Id.* (quotation omitted). Summary judgment may be granted only where there is no doubt from the evidence, with all inferences drawn in favor of the nonmoving party, that no genuine issue of material fact remains for trial and that the moving party is entitled to judgment as a matter of law. *Bee v. Greaves*, 744 F.2d 1387 (10th Cir. 1984).

However, only admissible evidence may be considered when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir.), *cert. denied*, 474 U.S. 823 (1985). Conclusory allegations do not establish issues of fact sufficient to defeat summary judgment. *McVay v. Western Plains Service Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987). "Allegations unsupported by any significant probative evidence tending to support the complaint are insufficient (internal citation omitted), as are conclusory assertions of the existence of factual disputes." *Schrader v. E.G.& G., Inc.*, 953 F. Supp. 1160, 1164 (D. Colo. 1997) (citing *Anderson*, 477 U.S. at 247-48).

      B.    <u>Whether Bituminous Owes Front Range a Duty to Defend or Indemnify</u>

I first turn to Plaintiff's argument that it does not owe a duty to defend or indemnify Front Range under the Bituminous Primary Policies (Count I) or the Bituminous Umbrella Policies (Count II).

A duty to defend "is determined by an examination of the allegations in the underlying complaint against the insured." *Compass Ins. Co. v. City of Littleton*, 984

P.2d 606, 614 (Colo. 1999); *see also Gen. Security Indem. Co. v. Mountain States Mut. Cas.*, 205 P.3d 529, 532 (Colo. App. 2009) ("In determining whether a duty to defend exists, a trial court must limit its examination to the four corners of the underlying complaint".). "The duty to defend pertains to the insurance company's duty to affirmatively defend its insured against pending claims." *Constitution Assocs. v. New Hampshire Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996). The duty to indemnify, on the other hand, "relates to the company's duty to satisfy a judgment entered against the insured." *Id.* The Colorado Supreme Court explained that "[t]he duty to defend is triggered more easily than is the duty to indemnify." *Id.* "Generally, the duty to defend arises where the alleged facts even *potentially* fall within the scope of coverage. . . . *Id.*; *see also Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089-90 (Colo. 1991).

The Colorado Supreme Court "has set a high standard for an insurance company seeking to avoid its duty to defend". *Compass Ins. Co.*, 984 P.2d at 613. Quoting *Hecla Mining Co*, 811 P.2d at 1089, it stated in the *Compass* decision:

> [a]n insurer seeking to avoid its duty to defend an insured bears a heavy burden, as the duty to defend arises when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy. "The actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend." Rather, the obligation to defend arises from allegations in the complaint, which if sustained, would impose a liability covered by the policy. "[W]here the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim.

*Id.* at 613-14. In other words, the duty to defend exists "unless there is no factual or

legal basis on which the insurer might eventually be held liable to indemnify the

insured." *Hecla Mining Co.*, 811 P.2d at 1090.

> 1. <u>Whether the Wrap Exclusions are Valid and Enforceable Parts of the Bituminous Policies or Unilateral Modifications Unsupported by Consideration</u>

In the motion, Plaintiff Bituminous first asserts that Front Range sought and

obtained a premium reimbursement (constituting consideration) based on its

participation in the wrap-up insurance program.

The Bituminous policies issued to Front Range contain the following provision

that explains to the insured how the premium is to be calculated:

> This policy was issued with an "estimated premium" which requires an adjustment after the policy expires.  The estimated premium for this type of policy is usually based on the amount of your payroll...
>
> After the policy expires and the actual amount of the payroll…can be determined, the estimated premium is adjusted to develop the final premium. If the adjusted premium is less then the estimated premium, the difference will be refunded.  If it is more, you will receive a bill for the additional premium.

(ECF No. 46, Ex. A).  The audit information page also explains that Front Range will be

given a credit, but only if the policy is properly endorsed to reflect Front Range's

participation in a wrap-up insurance program:

> **Consolidated (Wrap-Up) Insurance Programs**
>
> If you are a contractor involved in a consolidated (wrap-up) insurance program, your payroll/receipts **will not** be automatically excluded from our audit. Please be sure to contact your agent <u>before</u> you begin working under a wrap-up program.  If your policies are <u>not</u> endorsed properly, payroll/receipts <u>will not</u> be excluded from the audit.

(ECF No. 52, Ex. A).

In support of its motion, Plaintiff Bituminous submitted evidence that during the 2004-05 policy period, Front Range, through its insurance agent, CIA Leavitt Insurance Agency ("CIA-Leavitt"), informed Bituminous that Front Range was enrolled in a wrap-up program in connection with the Gold Peak project in order to obtain a premium reduction at audit. (ECF No. 52, Ex. 1 and Ex. B). Bituminous contends that pursuant to the premium audit provisions, once Front Range provided Bituminous with documents demonstrating its participation in the wrap-up insurance program, the Bituminous policies were endorsed with wrap exclusions and Front Range was given credit during the premium audit.

According to the Affidavit of Jean Whyte, Branch Manager of Bituminous' Denver underwriting office, once the policy expired, Bituminous performed a premium audit as required by the policy. (ECF No. 52, Ex. B ¶ 4). As part of the audit, payroll associated with those construction projects in which Front Range was enrolled in a wrap-up insurance program were removed from the premium calculation, resulting in a reduction of premium in favor of Front Range. (ECF No. 52, Ex. B ¶ 7). This resulted in a net return of $267.00 to Front Range for the 2004-05 primary and umbrella policies. (ECF No. 52, Ex. B ¶ 8).

On the other hand, Front Range submitted an affidavit of Ralph Nance, the President of Front Range, stating that he "had no discussions, conversations, or additional correspondence with Bituminous concerning the Westchester Policy or the impact being an insured under that Policy would have on Front Range's liability and umbrella coverage with Bituminous." (ECF No. 49, Ex. 1). He further stated that "[n]either I, nor any other representative of Front Range agreed to the

changes set forth in the change endorsements. Had Bituminous discussed the issue with me, I would not have agreed to the changes set forth in the change endorsements." (ECF No. 49, Ex. 1).

After carefully considering the parties' arguments at the September 17, 2014 hearing and all of the pertinent evidence, I find that there is a genuine issue of material fact as to whether there was mutual assent to modify the policies to include the wrap exclusions. In support of its position that the wrap exclusions are valid and enforceable, Bituminous submitted correspondence demonstrating that Front Range not only assented to the wrap exclusions, but also sought a premium reimbursement based on its enrollment in the wrap-up insurance program for the Gold Peak project. Bituminous goes on to assert that it endorsed the policies with the wrap exclusions, provided copies of the exclusions to Front Range and credited Front Range for those projects during the premium audit resulting in a reimbursement to Front Range. However, Front Range's President refutes the entirety of these events in his affidavit. While I am dubious that no one at Front Range knew about and ultimately agreed to the wrap exclusions, given Bituminous' heavy burden and viewing the evidence in the light most favorable to Front Range, I simply cannot conclude that Front Range agreed to the changes to the Bituminous' policies, making the wrap exclusions valid and enforceable. I deny summary judgment as to this issue.

        2.    <u>Whether the Damage at the Gold Peak Construction Project Arose out of Front Range's Defective Grading Work or Vegetation Stripping and Silt Fence Installation</u>

Second, Plaintiff Bituminous argues that the underlying lawsuits allege that the damage to the project was partially caused by "Grading and Drainage," specifically,

-14-

"inadequate Slope of Grading Adjacent to the Foundation at the backfill zone around the buildings." (ECF No. 46, Ex. A, B and C). Both Tri-Star and Gold Peak allege that Front Range's work on the Project was "overlot and rough grading work." In response, Front Range contends that the allegation of improper slope grading may arise from vegetation stripping and silt fence installation, arguing that the underlying complaints failed to describe what constitutes vegetation stripping and silt fence installation or how the alleged damage might have related to this work. Thus, the allegedly defective grading work could have potentially occurred from work covered by the November 12, 2004 contract, which was prior to the issuance of the wrap exclusions.

Again after hearing from the parties at the September 17, 2014 hearing and viewing the evidence in the light most favorable to Front Range, I agree with Front Range that it is possible that the work done pursuant to each contract was integrally related in that the work performed under the November 12, 2004 contract was done in preparation for the more extensive project called for in the April 15, 2005 contract. Additionally, it is true that the underlying complaints do not explicitly specify which contract was the damaging contract. Therefore, I find genuine issues of material fact with respect to whether the damaging work was performed prior to the issuance of the wrap exclusions. Summary judgment is denied as to this issue.

### 3. Whether the Wrap Exclusions Became Effective on January 31, 2005 or June 1, 2005

Finally, Plaintiff Bituminous argues that the change endorsement modifying the general liability policy clearly states that the wrap exclusions became effective as to the Gold Peak Project on January 31, 2005, more than two months before Front Range

began its work under the April 15, 2005 contract. Alternatively, Front Range claims that there is a genuine dispute about what date was the effective date for the change endorsement. It is undisputed that the endorsement form states "Policy Changes Effective 06-01-05 to Policy Expiration 08-03-05." (ECF No. 46-5 at 23). However, the Manuscript Endorsement to the policy lists the effective date as January 31, 2005 for the Gold Peak project.

At the September 17, 2014 hearing, Bituminous argued that the January 31, 2005 date in the wrap exclusion schedule should control over the June 1, 2005 date on the endorsement page. *Trujillo v. State Mut. Life Assur. Co. of Worcester, Mass.*, 511 P.2d 534 (Colo. App. 1973) (holding that in construing an insurance contract, the courts consider the policy as a while, and specific provisions will control general provisions where the general provisions do not contradict the specific provisions); 2 Couch on Ins. § 22:2 (stating that if an insurance policy contains both general and specific provisions, the specific provision controls). While I agree with Bituminous that when there is a contradiction, which is clearly the case here, a specific provision should control over a more general provision, I find that Bituminous failed to prove which date—January 31, 2005 or June 1, 2005—should be considered "specific" and which date should be considered "general." In looking at the two conflicting dates, I find it reasonable to conclude that the Wrap policy was in place as of January 31, 2005, but was not effective as it relates to the liability policy until June 1, 2005. Thus, in viewing the evidence in the light most favorable to Front Range, I find a genuine dispute as to whether the wrap exclusions became effective on January 31, 2005 or June 1, 2005. There are two conflicting dates in the policy, and based on my careful review, there is

no clear indication as to which date controls.  This is a pivotal issue because if the damage occurred before Bituminous changed its policy to include a wrap exclusion, then the Bituminous policy would provide coverage for that damage.  Accordingly, I find genuine issues of material fact as to this issue, and summary judgment is denied.

IV.     CONCLUSION

Based upon the foregoing, it is

ORDERED that Plaintiff's Motion for Summary Judgment as to Counts I and II of its Complaint for Declaratory Judgment (ECF No. 46) is **DENIED.**  It is

FURTHER ORDERED that 3-day Trial to the Court is set for **Tuesday, February 3, 2015 at 9:00 a.m.**  A final trial preparation conference is set for **Tuesday, January 27, 2015 at 10:00 a.m.**  The parties are reminded to review and comply with all directives set forth in my Practice Standards with respect to trial preparation.

Dated:  September 24, 2014

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge